NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LEMUEL R. MECOUCH,        :
                               :     Civil Action No.
              Plaintiff,   :     07-4986 (NLH)
                               :
        v.                 :
                               :     **OPINION**
MICHAEL J. ASTRUE,        :
COMMISSIONER OF THE SOCIAL   :
SECURITY ADMINISTRATION     :
                               :
             Defendant.   :

**Appearances:**

WILLIAM A. SHEEHAN
24 SOUTH BROAD STREET
WOODBURY , NJ 08096
*Attorney for Plaintiff*

ADREEA LAURA LECHLEITNER
SOCIAL SECURITY ADMINISTRATION
26 FEDERAL PLAZA, ROOM 3904
NEW YORK, NY 10278-0004
*Attorney for Defendant*

**HILLMAN, District Judge**

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying plaintiff's application for Disability Insurance Benefits ("disability") and Supplemental Security Income ("SSI") (collectively "social security benefits") under Title II and Title XVI of the Social Security Act.  42

U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that plaintiff was not disabled.  The Court concludes that the ALJ failed to adequately explain his reasoning at the Step Three of the analytical framework.  Accordingly, this matter is remanded for proceedings consistent with this opinion.

## I.   BACKGROUND AND PROCEDURAL HISTORY

At the time of the decision below, plaintiff Lemuel Mecouch was a 43 year old former landscaper and construction worker.  Although he graduated with either a high school diploma or GED equivalent,[1] plaintiff asserts that he has been identified as mentally retarded from an early age.  On September 2, 2005, plaintiff filed an application for social security benefits alleging an onset of disability as of March 28, 2005 due to a back injury.  His application was denied initially and on reconsideration.  Plaintiff requested and received a hearing before the ALJ who found that plaintiff was not disabled.  Plaintiff appealed the decision, and the Appeals Council denied plaintiff's request for review.  Plaintiff now seeks this Court's review.

---

[1]  The plaintiff states that he received "a paper" in the mail.  Plaintiff's counsel states that he suspects it was a high school diploma, not a GED.

2

II.  **DISCUSSION**

A.  **Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of

3

Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate

the medical evidence presented, <u>Fargnoli</u>, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," <u>Hur v. Barnhart</u>, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." <u>Williams</u>, 970 F.2d at 1182.  Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age,

5

education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."  20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is

6

incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In Steps One, Two and Four of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000)(citing Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987)). No burden of proof applies at Step 3 because this step "involves a conclusive presumption based on the listings." Id. at 263 n. 2. In the final step, the Commissioner bears the burden of proving that work is available for the plaintiff. Id. "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.  Analysis**

**1.  The ALJ's Findings**

The ALJ concluded that plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability (Step One), and found that he had the following "severe" impairments (Step Two): degenerative joint disease of the lumbar spine, with herniated nucleus pulposus (L5-S1), and

borderline intellectual functioning.  The ALJ found, however, at Step Three that the record did not contain specific medical findings necessary to establish a "disability" under Listing 12.05C.  The ALJ then considered plaintiff's "residual functional capacity" to perform his "past relevant work" and found that plaintiff could not return to his past work as either a landscaper or construction worker as those jobs involved heavy exertional requirements and plaintiff retained the residual functional capacity to perform only light work activity (Step Four).  Finding that plaintiff could not return to his past relevant work, the burden shifted to the Commissioner to show that he is capable of performing other work which exists in the national economy (Step Five).  Based on a review the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations and evidence presented by the vocational expert at the hearing, the ALJ found that based on plaintiff's age, education, past relevant work experience and residual functional capacity, plaintiff was capable of working as either a garment sorter, light duty, unskilled employment, or as a nut sorter, sedentary and unskilled employment.

## 2. Listing 12.05C

Plaintiff argues that the ALJ's conclusion that the medical record did not contain the specific medical findings necessary to establish a disability under Listing 12.05C was

unsupported by substantial evidence in the record and that the
ALJ failed to articulate his analysis under Step 3.  This Court
agrees.

    The Social Security Administration's Listing of
Impairments § 12.05C[2] provides that a person is disabled if he or
she has a "valid verbal, performance, or full scale IQ of 60
through 70 and a physical or other mental impairment imposing
additional and significant work-related limitation of function,"
and the onset of the IQ impairment was before age 22.  See Gist
v. Barnhart, 67 Fed.Appx. 78 (3d Cir. 2003) (finding that
plaintiff must show proof of a deficit in adaptive functioning
with an initial onset prior to age 22 before determining specific

_____

    [2]  Listing 12.05 refers to mental retardation and states in
relevant part:

        Mental retardation refers to significantly
        subaverage general intellectual functioning
        with deficits in adaptive functioning initially
        manifested during the developmental period;
        i.e., the evidence demonstrates or supports
        onset of the impairment before age 22.

        The required level of severity for this
        disorder is met when the requirements in A,
        B, C, or D are satisfied.
                        ***
        C.   A valid verbal, performance, or full
             scale IQ of 60 through 70 and a physical
             or other mental impairment imposing an
             additional and significant work-related
             limitation of function;

See Disability Evaluation under Social Security (Blue Book-
September 2008) 12.00 Mental Disorders - Adult.

                                9

requirements of Listing 12.05C).  The requirement that a physical or mental impairment impose "additional and significant work-related limitation of function" is met if the impairment is found to be "severe" as defined in §§ 404.1520(c) and 416.920(c).  See Markle v. Barnhart, 324 F.3d 182, 188 (3d Cir. 2003) (stating that Commissioner released new regulations addressing the second prong of § 12.05C, stating that "[w]e always have intended the phrase to mean that the other impairment is a 'severe' impairment as defined in §§ 404.1520(c) and 416.920(c).") (citing "Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 Fed. Reg. 50746, 50772 (August 21, 2000)).

        Plaintiff argues that the ALJ erred in finding that he was not disabled at Step Three.[3]  He states that even though Listing 12.05C requires that the claimant only meet one of the requirements of a valid verbal, performance, or full scale IQ of 60 through 70, that he met all three because he scored 65 on the verbal IQ, 68 on the performance IQ, and a 63 on the full scale IQ.  Plaintiff also argues that he met the requirements under the opening paragraph, that the onset of mental retardation occur before age twenty-two, because he submitted fifteen pages of high school records that he alleges shows that he was mentally disabled.  In addition, plaintiff argues that he met the final

---

        [3]  Plaintiff does not dispute the ALJ's findings that he did not meet the requirements under Listing 1.00 (musculoskeletal).

requirement under 12.05C, that he also have a "severe" impairment because the ALJ found that his degenerative joint disease and herniated nucleus pulposis were severe impairments.  Plaintiff also argues that he had another severe impairment due to his reading disorder.

Plaintiff states that the ALJ's opinion was silent as to whether he met the IQ requirements under 12.05C.  The ALJ stated in his opinion that plaintiff was administered the "WAIS-III test, which yielded a Verbal IQ score of 65 and a Performance IQ score of 68 for a Full Scale IQ score of 63, i.e., scores falling within the extremely low range of intellectual functioning."  There is no interpretation of these scores - either they fall within the range or they do not.  The acknowledgment of the low scores by the ALJ indicates that the ALJ was aware of the low scores even if the ALJ did not specifically state that the low scores showed that plaintiff met the IQ requirements.  More importantly, for this Court's review, the ALJ did not find that plaintiff was not disabled based on his IQ scores.

Having met the IQ requirements, the issue is whether plaintiff was mentally retarded before the age of 22.  Plaintiff submits that he had a mental impairment in high school and produced fifteen pages of records from Pitman Public School for

the hearing before the ALJ.[4]

Plaintiff states that the school records show that while in high school, plaintiff was administered an IQ test (WATS) on or about January 1980 showing a verbal IQ of 76, performance IQ of 89, and full scale IQ of 80.  Cf. Beasich v. Commissioner of Social Security, 66 Fed.Appx. 419, 432 n. 8 (3d Cir. 2003) (finding plaintiff was evaluated at age 15 and obtained full scale IQ of 80, placing him within the borderline range of intellectual functioning; "[b]orderline intellectual functioning that is supported by the record can be a severe impairment.") (citing Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001)).

The recreated records state that plaintiff had received specialized education since 1971.  The records also state that plaintiff at 16 years of age (11th grade) demonstrated weakness in auditory memory for contextual material (could retell 9 of 22 related ideas; average stage for 16 year old student is 15-19 of the 22 related ideas), and weakness in auditory memory for unrelated materials (able to verbalize 5 digits forward and 2

---

[4] As plaintiff admits, the copies of the high school records that appear in the record are illegible.  To accommodate this Court, plaintiff recreated the records.  The recreated records contain some blank spaces in which plaintiff's counsel states he could not decipher the words from the original. Plaintiff's counsel has stated that the records were before the ALJ and, therefore, properly before this Court.  The government raises no objection to the submission of these recreated records.

backward; average range for 16 year old student is 10-11 digits). He was assessed to have an instructional reading level at the second or third grade level and an independent reading level at the first grade level.  His spelling grade equivalent was assessed at a first grade, seventh month level; his mathematics grade equivalent was assessed at a third grade, three month level; and his grade equivalent for general information was fourth grade, six months.

The ALJ's opinion states that "the claimant testified that he was enrolled in special education while in school; and he indicated that he was unable to read or write."  The ALJ does not, however, address any of the public school records or express his opinion as to plaintiff's mental status prior to age 22.  The ALJ may have found that the school records did not support a finding of mental retardation, or that the records were illegible, and rejected this evidence.[5]  See Gist, 67 Fed.Appx. at 81-82 (affirming ALJ's finding that plaintiff failed to carry her burden because she presented no documentary or other evidence to substantiate her testimony that she was placed in special education classes or otherwise suffered from deficits in adaptive functioning).  In order to perform a meaningful review, however,

---

[5]  Although we cite to certain portions of the record that show plaintiff operated at an educational level less than the 11th grade, the Court makes no finding as to whether the school records would support a finding of mental retardation.

13

the ALJ's opinion should provide analysis for the Court to determine whether the ALJ's rejected the school records and on what basis, and whether the ALJ considered plaintiff to be mentally retarded or not before the age of 22.  See Gober, 574 F.2d at 776.

With regard to plaintiff's argument that he met the final requirement under 12.05C because he has a severe impairment, the ALJ's opinion is clear that he found plaintiff to have the following severe impairments: degenerative joint disease of the lumbar spine with herniated nucleus pulposis and borderline intellectual functioning.  The finding of a severe impairment satisfies the requirement under 12.05C that plaintiff show, in addition to an IQ impairment, "a physical or other mental impairment imposing additional and significant work-related limitation of function."  See Markle, 324 F.3d at 187-88 (finding chronic obstructive pulmonary disease, hypertension, obesity, gout, and diminished intelligence," to be "severe," and restrictive to a limited range of light work thereby establishing second criterion for entitlement under § 12.05C - a physical or other mental impairment imposing additional and significant work-related limitations of function).

Therefore, the ALJ's opinion supports a finding that plaintiff had a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing

additional and significant work-related limitation of function" as required under 12.05C.  The opinion, however, is not clear as to the weight the ALJ assigned to the prerequisite requirement under 12.05C, that plaintiff's mental impairment existed prior to age 22, nor does it address how the impairments the ALJ did note should be treated at Step Three.

In sum, while it is clear to this Court that the ALJ performed a detailed analysis under the other four steps and may have even considered such evidence at Step Three, we should not be left to surmise on such issues.  This is especially so at Step Three which obligates the ALJ to compare the record evidence to the objective criteria of the appropriate listing and render what may be a final determination of disability.  See Sykes, 228 F.3d at 263 n.2 (Step Three "involves a conclusive presumption based on the listings").  Unless and until we have a clear articulated decision-making process at Step Three it is impossible for us to review that determination under the appropriate, albeit deferential standard.[6]  See Gober, 574 F.2d at 776.  For this reason, we remand to the ALJ for further findings and analysis on this issue.

---

[6] To be clear, this Court expresses no opinion on whether the record evidence supports a conclusion either way on whether the claimant meets the requirements for a finding of disabled under listing 12.05C.

**III.   <u>CONCLUSION</u>**

       For the reasons expressed above, the decision of the ALJ is reversed and this matter remanded for further proceedings consistent with this Opinion.  An accompanying Order will be issued.


                                                       __s/Noel L. Hillman_____

                                                 NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated: January 22, 2009